785 P.2d 1235

**The STATE of Arizona,**
**Appellee/Cross–Appellant,**

v.

**Otis Dale HOWARD,**
**Appellant/Cross–Appellee.**

**No. 2 CA–CR 89–0092.**

Court of Appeals of Arizona,
Division 2, Department A.

Oct. 5, 1989.

Review Denied Jan. 30, 1990.*

* Gordon, C.J., of the Supreme Court, was not present and did not participate in the determi-        nation of this matter.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Paul J. McMurdie, Phoenix, for appellee/cross-appellant.

Michael E. Farro, Sierra Vista, for appellant/cross-appellee.

## OPINION

HATHAWAY, Judge.

Appellant Otis Dale Howard, charged with manslaughter, allegedly committed with a dangerous instrument, appeals from a conviction of negligent homicide entered upon a jury verdict. The jurors found that appellant's car was a dangerous instrument, and the court sentenced him to an aggravated prison term of eight years.

Appellant alleges error in the admission of a blood sample, the allegation of use of his car as a dangerous instrument, and in sentencing appellant to an aggravated term. On cross-appeal, the state alleges error in the reduction of restitution based on a civil wrongful death action.

## FACTS

On the dark and rainy night of April 16, 1988, Department of Public Safety (DPS) Officer McCraney was summoned to an auto accident on Arizona State Route 92. Highway 92 is a narrow, four-lane roadway. There are no turn lanes. The speed limit is 55 mph. Appellant's car had rear-ended the car in which the victim was riding. That vehicle had slowed from 55 mph to make a left turn. Appellant's estimated actual speed upon impact was 62 to 71 mph.

Upon arrival, Officer McCraney observed an injured girl in the backseat of the rear-ended vehicle. She died shortly thereafter. He spoke with the attending paramedic who stated that appellant had some injuries, including head and facial injuries and lacerations. The paramedic also noted that he smelled alcohol. Officer McCraney advised Officer Dopadre, who radioed Officer Drummond to proceed to the Sierra Vista Hospital with his DPS blood testing kit.

When Officer Drummond arrived at the hospital, he went to the room where appellant was being treated. He observed medical personnel working on appellant. When asked if he needed a blood sample, he responded affirmatively and gave the lab technician the DPS test kit. Appellant was not under arrest. It is disputed whether the blood drawn for the test kit was drawn exclusively for police purposes or was included as a portion of that drawn for medical purposes. The DPS blood sample tested .24 percent blood alcohol content.

## PROPRIETY OF BLOOD SAMPLE

Appellant challenges admission of the blood sample. Appellee has the burden of proving by a preponderance of the evidence that the blood sample was lawfully acquired. See Ariz.R.Crim.P. 16.2(b), 17 A.R.S. See also, *State v. Harris*, 131 Ariz. 488, 642 P.2d 485 (App.1982). The trial court has discretion to grant or deny a motion to suppress. *State v. Wright*, 125 Ariz. 36, 607 P.2d 19 (App.1979). We will review the facts in the light most favorable to the trial court's ruling and will not disturb it absent clear and manifest error. *State v. Gerlaugh*, 134 Ariz. 164, 654 P.2d 800 (1982); *State v. Hicks*, 133 Ariz. 64, 649 P.2d 267 (1982).

Appellant argues that a blood sample may only be taken after arrest and in compliance with the implied consent statute, or as provided in A.R.S. § 28–692(M). Under § 28–692(M), the warrantless removal of blood is permissible "if (1) probable cause exists to believe the person has violated A.R.S. § 28–692(A) or (B), (2) exigent circumstances are present and, (3) the blood is drawn for medical purposes by medical personnel." *State v. Cocio*, 147 Ariz. 277, 286, 709 P.2d 1336, 1345 (1985). See also *State v. Brita*, 158 Ariz. 121, 761 P.2d 1025 (1988).

██ It is undisputed that appellant was not under arrest and had not been advised of his rights under the implied consent statute. Appellant argues that the sample could not be taken pursuant to § 28–692(M), because the three-pronged test under *Cocio* was not met, and his motion to suppress should have been granted. He contends that none of the officers

determined independently that there was alcohol on appellant's breath, that the only evidence was the paramedic's statement that he might have detected the smell of alcohol, and that the odor might have resulted from head injuries. He posits this was no more than an unsupported suspicion, and probable cause was not present. Probable cause is something less than the proof needed to convict and something more than suspicions. *Hansen v. Garcia, Fletcher, Lund and McVean,* 148 Ariz. 205, 713 P.2d 1263 (App.1985); *State v. Vaughn,* 12 Ariz.App. 442, 471 P.2d 744 (1970).

■ Appellee responds that this issue was clearly presented to the trial court and specific findings were made. Officer McCraney testified that the paramedic stated that he detected an odor of alcohol that could have been produced by appellant's consumption of alcohol or something else associated with the appellant's injuries. The surgeon present when appellant was in the emergency room testified he was unaware that head injuries alone would cause a smell of alcohol. We find sufficient evidence to support the probable cause finding.

■ Appellant further contends that appellee failed to show exigent circumstances because he was not unconscious after the accident and could have been placed under arrest and advised of his implied consent rights. Appellee asserts that argument fails under *Cocio,* supra. There the court found exigent circumstances existed because of the destructibility of the evidence: "[t]he highly evanescent nature of alcohol in the defendant's blood stream guaranteed that the alcohol would dissipate over a relatively short period of time." 147 Ariz. at 286, 709 P.2d at 1345. We agree with the trial court's finding that exigent circumstances existed.

■ Appellant also challenges the trial court's finding that the blood sample was drawn for medical purposes. He contends that the lab technician was not summoned to draw the sample until after medical personnel in appellant's room inquired whether Officer Drummond needed a blood sample. The record reflects that the technician was present in the emergency room when Officer Drummond arrived and that she withdrew four or five blood samples. She gave one to Officer Drummond and the others were used for medical purposes. Appellee contends the officer's indication that he wanted a blood sample prior to the technician's drawing the blood does not alter the fact of its being taken for medical purposes. *Cocio,* supra. We agree.

### AUTOMOBILE AS DANGEROUS INSTRUMENT UNDER A.R.S. § 13–604(F)

■ Appellant next contends that the court erred in granting the state's motion to allege use of his automobile as a dangerous instrument to enhance punishment under A.R.S. § 13–604(F). He argues that use of an automobile in the commission of a crime does not automatically trigger the statutory enhancement provisions. Our supreme court has recently held that so long as the use of a car was not an element of the underlying offense, the state could properly seek to enhance a sentence by alleging the car as a dangerous instrument. *State v. Orduno,* 159 Ariz. 564, 769 P.2d 1010 (1989).

In the present case, appellant was charged with manslaughter and convicted of negligent homicide. The use of an automobile is not an element of the underlying offense. We find no error.

### AGGRAVATED SENTENCE

Finally, appellant argues that the trial court abused its discretion in sentencing him to an aggravated term because it considered improper aggravating circumstances and was influenced by public pressure.

■ The imposition of sentence is within the broad discretion of the trial court. *State v. Mincey,* 141 Ariz. 425, 687 P.2d 1180, cert. den., 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984). An abuse of discretion is characterized by either arbi-

trariness, capriciousness or by failure to conduct an adequate investigation of the sentencing factors. *State v. Gordon*, 125 Ariz. 425, 610 P.2d 59 (1980).

■ At sentencing the court found as aggravating circumstances the death of the girl, appellant's consumption of an "incredible amount of alcohol," his familiarity with the road and his knowledge that it was dangerous even under optimum circumstances. Appellant argues under *State v. Germain*, 150 Ariz 287, 723 P.2d 105 (App. 1986), that the finding of the girl's death as an aggravating circumstance was error because it is a necessary element of the underlying offense of which he was convicted, and therefore could not also be an aggravating factor in sentencing.

■ Appellee responds that the *Germain* court held just the opposite by explaining that the legislature specifically mandated that death could be an aggravating factor under A.R.S. § 13–702(D)(1). See also *State v. Just*, 138 Ariz. 534, 675 P.2d 1353 (App.1983). We agree and find sufficient evidence in the record on which the trial court could properly find each of the other aggravating factors. Accordingly, we affirm.

### CROSS–APPEAL: RESTITUTION

■ Cross-appellant complains that the trial court erred by reducing the amount of restitution based on the $100,000 settlement received by the victim's family in a civil wrongful death action. A portion of that sum had been used to pay the expenses incurred as a result of the victim's death, and the court found that appellant was not responsible for that sum as restitution.

The essence of cross-appellant's contention is that as a matter of public policy, the court's action improperly permitted cross-appellee's insurance to act as a substitute for the punitive effects the legislature intended by imposing mandatory restitution. That argument is meritless. A.R.S. § 13–603(C) provides:

If a person is convicted of an offense, the court shall require the convicted person to make restitution to the person who is the victim of the crime or to the immediate family of the victim if the victim has died, in the full amount of the economic loss as determined by the court....

Economic loss is defined in A.R.S. § 13–105(11) as:

... any loss incurred by a person as a result of the commission of an offense ... Economic loss does not include ... damages for pain and suffering, punitive damages or consequential damages.

The net effect of cross appellant's request would be to award the victim an amount in excess of that intended by the legislature. The purpose of mandatory restitution is to make the victim whole, not to punish. See A.R.S. § 13–807. Accordingly, we find no error.

ROLL, P.J., and HOWARD, J., concur.