258 P.3d 195

**STATE of Arizona, Appellee,**

v.

**Gustavo GARCIA, Appellant.**

**No. 1 CA–CR 10–0204.**

Court of Appeals of Arizona, Division 1, Department C.

May 31, 2011.

Thomas C. Horne, Arizona Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section and William S. Simon, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Thomas Baird, Deputy Public Defender, Phoenix, Attorney for Appellant.

## OPINION

BARKER, Judge.

¶ 1 In this opinion we construe Arizona Revised Statutes ("A.R.S.") section 13–1804(A)(1), (2), and (C) (Supp. 2010).[1] Those statutes provide that theft by extortion is a class 2 felony when a deadly weapon or dangerous instrument is used but a class 4 felony when those items are not used. For the reasons below, we affirm as modified and remand for resentencing.

### Facts and Procedural Background

¶ 2 Gustavo Garcia appeals his convictions for two counts of theft by extortion, a class 2 dangerous felony. Garcia was also convicted and sentenced for one count of kidnapping, one count of aggravated assault, and one count of misconduct involving weapons, but he does not appeal these convictions and sentences. Garcia argues that insufficient evidence was presented in the trial court for the jury to convict him of theft by extortion.

¶ 3 In May 2009, the victim was living in Phoenix with his uncle, who was a drug dealer. On May 31, the victim was at an apartment retrieving money from a drug deal. When he left, a Crown Victoria pulled up to him in the parking lot, blocking his exit. Four men armed with a shotgun, a rifle, and a "short weapon" exited the car and began to beat the victim with the weapons. The victim believed he was being robbed, so he told his assailants to take his money, but the attackers instead stated that they were going to take him. They grabbed the victim and forced him into the back of the car, binding his hands with duct tape. The assailants continued to beat the victim, and the driver told him not to move and he was "going to kill [him] because [he] was staining his car with blood."

¶ 4 The men took the $2,000 the victim had received from the drug deal, the victim's wallet containing $500, and the victim's cell phone. After stopping by a party, they took the victim to a hotel room and held him captive. The victim was freed only to eat, and his face remained covered so that he could not see his captors.

¶ 5 The victim's family was meanwhile attempting to contact him. His sister called his cell phone, and a man whose voice she did not recognize answered. The man instructed her to call the victim's uncle and to tell the uncle to contact him. She decided otherwise. The victim's sister contacted the victim's cousin and asked him to report the kidnapping to the police.

¶ 6 The cousin arrived at the police station before the sister, and the police made contact with the abductors through the cousin. The captors asked for money and methamphetamine, and said they would kill the victim if their demands were not met. When the sister arrived at the police station, the police would not let her speak to the captors because she "would break down uncontrollably," and therefore might be a liability if put on the phone. Instead, the police officers decided to have an officer pose as a different family member to speak with the kidnappers.

1. We cite to the current version of the statute because there have been no revisions since 2009 to the provisions at issue here.

The officer posing as the family member told the abductors that the family was trying to raise the money to pay the abductors, and that the sister was "en route from Mexico with some money but she was not there yet." The suspects asked how much money the sister was bringing, and the officer told them that the sister was bringing $30,000. The suspects stated that they wanted more money.

¶ 7 The kidnappers ultimately agreed to accept $500,000 and ten pounds of methamphetamine for the victim's release. The police then made arrangements to drop the money requested by the kidnappers in a trash bin at a specified drop point. The police established surveillance in the drop-off area. They collected some false currency in a duffel bag and took the sister with them to the drop point where she completed the drop. The officers ultimately arrested Garcia and other suspects after the suspects retrieved the money from the drop point.

¶ 8 At trial, the jury found Garcia guilty of one count of kidnapping, a class 2 dangerous felony; two counts of theft by extortion, a class 2 dangerous felony; one count of aggravated assault, a class 3 felony; and one count of misconduct involving weapons, a class 4 dangerous felony. The court sentenced Garcia on February 24, 2010, to 10.5 years for the first three counts, 3.5 years for the fourth, and 6 years for the sixth, all to be served concurrently. Garcia timely appealed his theft by extortion convictions. We have jurisdiction under Article VI, Section 9, of the Arizona Constitution, and A.R.S. §§ 12–120.21(A)(1), 13–4031, and 13–4033(A) (2010).

### Discussion

¶ 9 Garcia argues that his convictions for two counts of theft by extortion were improper because the evidence was insufficient to sustain the jury's verdicts. "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto–Fong*, 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996). A

conviction "may rest solely on circumstantial proof," *State v. Nash*, 143 Ariz. 392, 404, 694 P.2d 222, 234 (1985), but mere "[s]peculation concerning possibilities is an insufficient basis" to sustain a conviction. *State v. Mathers*, 165 Ariz. 64, 71, 796 P.2d 866, 873 (1990).

¶ 10 Theft by extortion is a class 2 felony if the defendant "knowingly obtain[s] or seek[s] to obtain property or services by means of a threat to .... [c]ause physical injury to anyone by means of a deadly weapon or dangerous instrument." A.R.S. § 13–1804(A)(1), (C). Theft by extortion is a class 4 felony if a deadly weapon or dangerous instrument is not utilized. A.R.S. § 13–1804(A)(2), (C). The State charged Garcia with two counts of theft by extortion as a class 2 felony: one for seeking to obtain property from the victim's sister by means of a threat with a deadly weapon to the victim, and one for seeking to obtain property from the victim's cousin by means of a threat with a deadly weapon to the victim. Garcia contends that both convictions were improper.

¶ 11 Garcia argues that the State presented insufficient evidence to convict him of the class 2 felony of threat by extortion of the cousin because no evidence was presented that Garcia threatened to injure the victim with a deadly weapon or dangerous instrument. In responding to this argument, the State does not cite to any direct evidence that the kidnappers tried to obtain property by communicating a threat to cause physical injury to the victim by means of a deadly weapon or dangerous instrument.[2] Instead, the State argues that because the kidnappers threatened to kill the victim, and because "murders almost invariably involve the use of a dangerous instrument or deadly weapon .... [t]he circumstances of the instant case—*i.e.,* an organized kidnapping for ransom—demonstrate an implicit threat the endangered victim would be killed expeditiously, which presumably would have necessitated the use of a dangerous instrument or deadly weapon." The State essentially argues that as long as a threat of death is made, the requirement to cause injury by

**2.** Although a weapon was used during the kidnapping, no evidence was presented that a weapon was used in the course of the extortion.

means of a "deadly weapon or dangerous instrument" is satisfied. That, however, is not what the statute says.

¶ 12 In construing statutes, "[w]e begin with the text of the statute ... because the best and most reliable index of a statute's meaning is the plain text of the statute." *State v. Christian*, 205 Ariz. 64, 66, ¶ 6, 66 P.3d 1241, 1243 (2003). "When the plain text of a statute is clear and unambiguous there is no need to resort to other methods of statutory interpretation to determine the legislature's intent because its intent is readily discernable from the face of the statute." *Id.; Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994) (same). We follow the plain language "unless application of the plain meaning would lead to impossible or absurd results." *Bilke v. State*, 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003).

¶ 13 What the statute penalizes as a class 2 felony is a threat to "cause physical injury ... by means of a deadly weapon or dangerous instrument." A.R.S. § 13–1804(A)(1), (C).[3] It does not state that a class 2 felony occurs when there is a threat of death. A class 4 felony results if the same elements are met and the threat is to "cause physical injury" without using a deadly weapon or dangerous instrument. A.R.S. § 13–1804(A)(2). The legislature's choice to differentiate the greater offense from the lesser offense based on the use of a deadly weapon or dangerous instrument, rather than upon a distinction between threatening death or not, dictates how the statute applies. A hypothetical example helps make the point. *In re Andrew C.*, 215 Ariz. 366, 370, ¶ 21, 160 P.3d 687, 691 (App.2007) ("Frequently, hypothetical examples shed light on the viability, or lack thereof, of an asserted legal principle.").

¶ 14 Suppose a captor extorts money by threatening to shoot a person in the foot. Such a threat would qualify as a class 2 felony even though no threat of death is implicated. This is so because the captor threatened the physical injury by use of a dangerous weapon, i.e., a gun. Suppose on the other hand the captor extorted money by saying he was going to strangle someone to death with his hands. Even though death was directly threatened, this would not constitute a class 2 felony under the statute. That scenario simply does not fulfill the statutory requirement that a "deadly weapon or dangerous instrument" be the means of causing injury as required by § 13–1804(A)(1). A person's hands, as the State concedes, do not qualify as a "dangerous instrument" or a "deadly weapon." *See State v. Gordon*, 161 Ariz. 308, 310–11, 778 P.2d 1204, 1206–07 (1989) (holding that "[t]he trial court erred by allowing the jury to find that defendant's fists were dangerous instruments," and citing the majority rule that "body parts do not constitute deadly weapons or dangerous instruments"). Under § 13–1804(A)(1), the act of threatening death alone neither results in, nor qualifies for, punishment as a class 2 felony. What is required is that the assailant threaten to "cause physical injury"—not necessarily death—and that he or she do so "by means of a deadly weapon or dangerous instrument." A.R.S. § 13–1804(A)(1). Under § 13–1804(A)(2), the identical elements are required except that the use of a deadly weapon or dangerous instrument is not necessary. To conclude: if the threat of injury is by means of a deadly weapon or dangerous instrument, it is a class 2 felony; if the threat of injury (death or not) is by some other means, it is a class 4 felony. A.R.S. § 13–1804(A)(1), (2), (C).

¶ 15 Here, we cannot say that the statute's focus on punishing the use of deadly weapons or dangerous instruments, more than the threat of death itself, works "an impossible or absurd result." *Bilke*, 206 Ariz. at 464,

---

**3.** The full text of the pertinent statute is as follows:

A. A person commits theft by extortion by knowingly obtaining or seeking to obtain property or services by means of a threat to do in the future any of the following:

1. Cause physical injury to anyone by means of a deadly weapon or dangerous instrument.

2. Cause physical injury to anyone except as provided in paragraph 1 of this subsection.

. . . .

C. Theft by extortion as defined in subsection A, paragraph 1 is a class 2 felony. Otherwise, theft by extortion is a class 4 felony. A.R.S. § 13–1804(A)(1), (2), (C).

¶ 11, 80 P.3d at 271. If the legislature intends to punish just as severely threats of death not tied to deadly weapons or dangerous instruments, it is certainly free to amend the statute to reflect that intent. That, however, is not our prerogative. *Ballesteros v. Am. Standard Ins. Co.*, 226 Ariz. 345, 349, ¶ 17, 248 P.3d 193, 197 (2011) ("[I]t is not our place to rewrite the statute.").

¶ 16 Having construed the statute, we turn now to the State's assertion that there is sufficient evidence to support the conviction based on the use of a deadly weapon or dangerous instrument.[4] As noted above, although a conviction "may rest solely on circumstantial proof," *Nash*, 143 Ariz. at 404, 694 P.2d at 234, "[s]peculation concerning possibilities" alone "is an insufficient basis" to sustain a conviction. *Mathers*, 165 Ariz. at 71, 796 P.2d at 873. The State does not contend that the telephone calls in which the kidnappers threatened the victim's life contain any reference to using a deadly weapon or dangerous instrument. It only argues that a jury should be permitted to assume that because the victim's life was threatened the use of a deadly weapon or dangerous instrument may be inferred. As we explain above, that is simply not the case.

¶ 17 There are different ways of inflicting death than those brought about by a "deadly weapon or dangerous instrument." In fact, in this case the record reflects that when asked to know whether the victim was still alive, the extortioners stated they could "call [and] ... would be able to listen ... while they *were beating* [him]." (Emphasis added.) A beating can just as easily occur with fists or feet as with bricks or bats. The latter may qualify as dangerous instruments;

the former do not. *Gordon*, 161 Ariz. at 311, 778 P.2d at 1206. To allow a jury to speculate about the existence of a deadly weapon or dangerous instrument, when no evidence (or inference) of one is presented to the one being extorted,[5] is contrary to the legislature's requirement that such a weapon or instrument be used to qualify as a class 2 felony. A.R.S. § 13–1804(A)(1). It also runs counter to the foundational requirement that juries may not speculate about what the evidence might or might not be. *Mathers*, 165 Ariz. at 71, 796 P.2d at 873.

¶ 18 We therefore hold that Garcia's convictions for theft by extortion under § 13–1804(A)(1) were not supported by sufficient evidence. The evidence at trial, however, was more than adequate to support a conviction for the necessarily included lesser offense under § 13–1804(A)(2), which does not require the use of a deadly weapon or dangerous instrument. *See In re James P.*, 214 Ariz. 420, 424, ¶ 18, 153 P.3d 1049, 1053 (App.2007) ("A crime is a lesser-included offense of the originally charged crime if 'by its very nature, [it is] always a constituent part of the greater offense, or ... the charging document describes the lesser offense even though it does not always make up a constituent part of the greater offense.'") (alteration in original) (quoting *In re Victoria K.*, 198 Ariz. 527, 529–30, ¶ 9, 11 P.3d 1066, 1068–69 (App.2000)). Because of this, we modify the judgment to reflect that the theft by extortion convictions are class 4 felonies. *See* Ariz. R.Crim. P. 31.17(d);[6] *see also State v. George*, 206 Ariz. 436, 442–43, ¶ 14, 79 P.3d 1050, 1056–57 (App.2003) ("[B]ecause the evidence was more than adequate to support a conviction for the necessarily included of-

---

4. Garcia independently contends that, as to the sister, the extortion conviction fails because there was no evidence of a threat made directly to her. The record, however, shows that when the police officer involved told the captors that the sister was in route they asked how much money the sister was bringing with her. When the officer responded, "$30,000," the captors stated that they wanted more money and asked if $30,000 "was all [the victim] was worth." This is sufficient evidence to support the other elements of theft by extortion under A.R.S. § 13–1804(A)(2).

5. For example, although weapons were clearly involved in the other offenses, the State never

argued in closing that this information about weapons was known to the victim's sister or the victim's cousin, who were the subjects of the extortion.

6. When the Appellate Court finds that the evidence introduced at trial is not legally sufficient to establish the defendant's guilt of the offense of which he was convicted, but is legally sufficient to establish his guilt of a necessarily included offense, it may modify the judgment to one of conviction for the lesser offense and remand the case to the trial court for resentencing.
   Ariz. R.Crim. P. 31.17(d).

fense . . . , we modify the judgment to reflect [the defendant's] conviction for the lesser offense and remand the case to the trial court to resentence [the defendant] accordingly."). Resentencing is required. Ariz. R.Crim. P. 31.17(d).

### *Conclusion*

¶ 19 For the foregoing reasons, we affirm as modified Garcia's convictions for two counts of theft by extortion to class 4 felonies and remand for resentencing on these counts.

CONCURRING: MARGARET H. DOWNIE and MICHAEL J. BROWN, Judges.